Bennac *vs.* The People.

The magistrate to whom a common law certiorari is issued, to remove proceedings before him under the act respecting disorderly persons, (1 *R. S.* 638,) should in his return set out *in hæc verba* all the proceedings before him.

The *confession* spoken of in the second section of that act, on which a magistrate is authorized to convict a disorderly person, means a plea of guilty, or some acknowledgment tantamount thereto; not an admission deduced by the magistrate argumentatively.

On a conviction under 1 *R. S.* 638, a record of the conviction, specifying gene-

Bennac *v.* The People.

rally the nature and circumstances of the offence, must be made up by the magistrate and signed by him, and filed in the county clerk's office, before the warrant of commitment can be issued.

THIS is the same case which gave rise to the writ of habeas corpus, and the other proceedings, reported ante, page 31. The facts are sufficiently detailed in the opinion of the court. The cause was submitted without argument, by

*A. T. Wilson*, for the plaintiff in error.

*A. C. Farlin*, (district attorney,) for the people.

*By the Court*, WILLARD, J. This is a certiorari to Halsey R. Wing, Esq. one of the justices of the town of Queensbury, in the county of Warren, to remove to this court certain proceedings before him under the statute relative to disorderly persons. (1 *R. S.* 638.) It is a common law certiorari. The justice has made a return, but he has not set out *in hæc verba*, as he ought to have done, the whole proceedings before him. The return states that on the 11th of June, 1846, David M. Dean, one of the overseers of the poor of the town of Queensbury, in said county, preferred his complaint in writing and under his affirmation, before the justice, in these words, to wit: "That John B. Bennac, of said town, is a disorderly person, within the meaning of the statute in such case made and provided, in this, to wit, that the said John B. Bennac has left his wife Helen, and threatens to suffer her to become a burthen on the public, and that this deponent therefore complains of the said J. B. B. as a disorderly person." Now if this is all the complaint, it is defective. The complaint should be subscribed by the party and sworn to, and the jurat of the magistrate should be added. It does not appear by the complaint itself, that it was sworn to. This is required by the statute. (1 *R. S.* 638, § 2.)

The return then sets out the substance of the warrant and the return thereto of Crossitt, the constable. It next sets out the examination of Bennac at length, upon which the convic-

tion and sentence were founded, and the final warrant of commitment, reciting the conviction and sentence. No record of conviction is set out, nor does it appear that any was made.

The second section of the act, (1 *R. S.* 638,) provides, " that if it shall appear by the confession of the offender, or by competent testimony, that he or she is a disorderly person, the justice may require of the offender sufficient sureties for his or her good behavior for the space of one year. In default of such sureties being found, the justice shall make up, sign and file in the county clerk's office a record of the conviction of such offender as a disorderly person, specifying generally the nature and circumstances of the offence, and shall by warrant under his hand commit such offender to the common jail of the city or county, there to remain until such sureties be found, or such offender be discharged according to law." The written examination is a part of the proceedings properly before us on this certiorari, and as it is certified by the justice to be all the evidence on which he convicted the defendant, it is competent for us to review it in order to see if the evidence was sufficient for that purpose. I think, taken together, it did not warrant the justice in convicting the accused. Although he admits that he was lawfully married to his wife, he still asserts that her former husband was then living, and that that was one reason why he refused to live with her and support her. He says he did not intend to support her—denies that he intends to go away from her, &c.

The first section of the statute (1 *R. S.* 638) enacts that " all persons who threaten to run away and leave their wives or children a burthen on the public, shall be deemed disorderly persons." Bennac never threatened to run away and leave his wife, &c. He admits he ceased living with her, and refused to support her; and he assigns the reasons, one of which is a good one, if true, viz. that her former husband is still living. I think the magistrate ought not to have convicted him upon this examination alone. The confession spoken of in the statute, upon which the magistrate is authorized to convict, means a plea of guilty, or what is tantamount to it. It would be

dangerous to allow a magistrate to deduce an admission of guilt, by a process of argument, from such an examination as this was.

We must intend, in this case, that no record of the conviction was ever made up. The statute contemplates the making up, signing and filing such record, before the warrant shall be issued to commit the accused, after conviction. (1 *R. S.* 638, § 3.) This is not like the convictions before a court of special sessions. The statute expressly allows those courts twenty days within which to make out and file the certificate of conviction. (2 *R. S.* 717, §§ 38 *to* 41.) The object of the certificate, in the latter case, is to afford evidence in case the accused should commit a second offence; and hence there was no necessity for filing it before issuing the warrant of commitment. That reason does not apply to summary convictions under the act concerning disorderly persons. The records of conviction under the last mentioned act, by section eight, are required to be examined by the court of general sessions, and they are authorized to discharge such disorderly persons either absolutely or upon receiving sureties for their good behavior. The sessions also may inquire into each case and hear any proofs that may be offered. The record of conviction on such examination is made presumptive evidence of the facts therein contained, until disproved. We think the justice erred, in issuing a mittimus without a record, as we must intend was done in this case, as none is set out in the return.

The proceedings must be reversed.