## THE PEOPLE *on rel.* RODDY *a.* THE NEW YORK JUVENILE ASYLUM.

*Supreme Court, First District; Special Term, May,* 1860.

### HABEAS CORPUS.—NEW YORK JUVENILE ASYLUM.

Where a child has been committed to the New York Juvenile Asylum, and the commitment appears to be in the form prescribed by the statute creating that institution, the court will not, on habeas corpus, inquire into the legality, regularity, or sufficiency of the proceedings before the magistrate, which resulted in such commitment.

The forum provided by the Legislature for the correction of any errors in such proceedings is the board of directors. If circumstances occur subsequent to a legal commitment, which render a discharge proper, the board of directors alone have discretionary power to grant it.

Proceedings, upon habeas corpus, instituted by the relator to obtain possession and custody of his two infant daughters.

The facts are set forth in the opinion.

*John O'Rourke & John T. Doyle,* for relator.

*John A. Bryan,* for respondents.

BONNEY, J.—The respondents were incorporated by the Legislature of the State of New York, by an act entitled " An act to incorporate the New York Juvenile Asylum," passed, June 30, 1851 (*Session Laws,* 1851, 332, amended by ch. 387, *Laws of* 1854). By section 2, the objects of this corporation are declared to be, " to receive and take charge of such children between the ages of 7 and 14 years as may be voluntarily intrusted to them by their parents or guardians, or committed to their charge by competent authority, and to provide for their support; and to afford them the means for moral, intellectual, and industrial education." By section 7, the respondents are authorized to take under their care and management, 1st. Children who may

be thus voluntarily surrendered; and 2d. "Children between 7 and 14 years of age who may be committed to the charge of this corporation, by order of any magistrate or magistrates of the city and county of New York, as hereinafter provided." The act further provides, by section 9, that whenever any child between the ages of 7 and 14 years shall be brought by any policeman before a magistrate of said city, "upon the allegation that such child was found in any street, highway, or public place in said city, in the circumstances of want and suffering, or abandonment, exposure, or neglect, or of beggary," therein specified and defined, "and it shall be proved to the satisfaction of such magistrate, by competent testimony," that such child was so found, "and it shall further appear, to the satisfaction of such magistrate, by competent testimony, or by the examination of the child, that, by reason of the neglect, habitual drunkenness, or other vicious habits of the parents, or lawful guardian of such child, it is a proper object for the care and instruction of this corporation, such magistrate, instead of committing such child to the almshouse, &c., may, in his discretion, by warrant in writing under his hand, commit such child to this corporation, to be and remain under the guardianship of its directors, until therefrom discharged in manner prescribed by law;" and the same section prescribes the form of the warrant of commitment. By section 10 it is provided that this commitment, or order of the magistrate, shall be executed by a policeman, who must convey the child to the house of reception of the institution (No. 71 West Thirteenth-street), "and such child shall be detained in such house of reception until discharged or removed therefrom in the manner hereinafter provided."

By section 11, the magistrate making such order is required immediately to deliver to a policeman of the city a notice addressed to the father of the child (if living and residing in the city), informing him of such commitment to the house of reception, and notifying him "that, unless taken therefrom in the manner prescribed by law, within ten days after the service of such notice, the child therein named will be sent to the asylum of this corporation," which is situate at 175th-street. By section 12 it is provided that such notice shall be served personally, "or by leaving it with some person of sufficient age, at the place of residence or business of such party." By section

94 ABBOTTS' PRACTICE REPORTS.

The People *on rel.* Roddy *a.* The New York Juvenile Asylum.

13, "if the party to whom such notice shall have been addressed, or any other person, shall, within the time therein specified, prove to the satisfaction of the magistrate issuing the same, that the circumstances of want and suffering, or other circumstances" above described, "have not been occasioned by the habitual neglect or misconduct of the parents or lawful guardian of such child, then it shall be the duty of such magistrate, by order in writing," to grant a discharge and restore the child to the parent or guardian. By section 14, "if such proof shall not be produced within the time above prescribed, it shall be the duty of the magistrate by whom the child shall have been committed to the house of reception, to make and transmit to the superintendent thereof a notice in writing to that effect, and thereupon the child named in such notice shall be removed from such house of reception to the asylum of this corporation." And section 16 is as follows: "If, at any time after a child shall have been committed to the said New York Juvenile Asylum, as above provided for in this act, it shall be made to appear to the satisfaction of the board of directors of the said asylum, that such child was, on insufficient cause, false or deficient testimony, or otherwise, wrongfully or improvidently so committed, the said board of directors shall, on the application of the parents, guardian, or other protector of such child, discharge the child from the said asylum, and restore it to such parents, guardian, or protector; and, also, if, after a child shall have been properly committed to the said New York Juvenile Asylum, by virtue and in pursuance of the provisions of this act, any circumstances should occur, that, in the judgment of the board of directors of the said asylum, would render expedient and proper a discharge of such child from the said asylum, having a due regard to the welfare of the child, and the purposes of the asylum, the said board of directors, on the application of the parents, guardian, or protector of such child, may, in their discretion, discharge the child from the asylum, and restore it to its parents, guardian, or protector, on such reasonable conditions as the said board of directors may deem right and proper."

On the petition of the relator, stating that his two children, Ann and Maria Roddy, aged, respectively, 7 and 10 years, were improperly restrained of their liberty by the respondents,

a habeas corpus was issued, to which return is made, showing, that on the 24th of January, 1860, John Quackenbush, Esq., one of the police magistrates of the city of New York, issued first or temporary commitments of these children to the respondents' house of reception, in the form prescribed by section 9 of the act; that the complaint before the magistrate, on which such commitments were granted, was, that the children were found in a street or public place in the city of New York, in a condition of want, and without any protector, their mother being dead, and their father, the relator, being of intemperate habits, and at that time committed to the penitentiary for assault and battery; that on the 28th of February, 1860, the ten-day notice, as provided by sections 11 and 12, was served as to each of the children, on George Kellock, Esq., a superintendent connected with Blackwell's Island, where the penitentiary is situated, and who is the officer having charge of all such matters, and whose duty it is to attend to them; that such notices were thereupon delivered by such superintendent to the relator while confined in the penitentiary; that no one appeared before the magistrate as provided by section 13 of the act, to show cause why the children should not be fully committed; and that afterwards, and on the 16th of April, 1860, the magistrate issued notice to that effect, and the children were fully committed by him, and removed to the asylum as directed by section 14; that since then they have been maintained, educated, and cared for as the said act requires; that the originals of the temporary commitments, the ten-day notices, and the full commitments, are annexed to the return; and that the children are now produced in court, pursuant to the command of the writ.

The relator traverses the return, and states that he was sent to the penitentiary for one month·for assault and battery; that during his absence the children were illegally taken before the magistrate, and unlawfully, and without any warrant of law, committed to the respondents; and he denies that he has abandoned or neglected his children, or that he is unable to support and maintain them in a suitable manner. And the relator insists on his right to introduce evidence for the purpose of showing his character· and circumstances, and his pecuniary ability to take care of and maintain his children; also that they were not destitute or deserted, or without a protector

or means of subsistence when they were taken before the magistrate.

By this return it appears, and it is not controverted, that the children of the relator were fully and finally committed by the magistrate to the respondents in due form, as authorized and prescribed by their act of incorporation, which has devolved upon them the right and the duty to retain such children, and to provide for their proper maintenance and education. The proceedings before the magistrate, which resulted in these commitments, are not before me; and if they were, I could not, in this proceeding, inquire into their legality, regularity, or sufficiency. The commitments are regular in form, and appear to be literally in the language prescribed by the act. I cannot go behind them.

The allegation in the traverse, that the children were taken before the magistrate, and unlawfully and without any warrant of law, committed to the respondents, makes no issue of fact as to which I can take testimony, and the offer of evidence by the counsel for the relator must be overruled.

The act of the Legislature which creates the asylum, also provides a forum, viz., the board of directors, by which any error in the proceedings for the commitment of the children may and shall be corrected, and by which also the propriety of their discharge, by reason of acts or circumstances subsequently occurring, may and shall be determined. (§ 16.)

I do not see that I have any power, under this writ, to determine whether or not these children are properly detained, or to direct their discharge; and an order is therefore made, remanding them to the care and custody of the respondents, and that the writ of habeas corpus be discharged.